UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PAUL REED and ELENA GOLOVINA-REED, individually and as husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>ARTHREX, INC., a foreign corporation; and JOHN DOES I – XX, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00337-LRH-WGC<br><br>ORDER |

Defendant Arthrex, Inc. moved to dismiss several claims in this product-liability case. ECF No. 7. Plaintiffs Paul Reed and Elena Golovina-Reed opposed the motion. ECF No. 13. Arthrex filed a reply. ECF No. 16. After considering the parties' arguments, the court denies Arthrex's motion as to the claims for strict product liability and breach of the implied warranty of merchantability. However, the court grants Arthrex's motion as to the claims for breach of express warranties and fraudulent misrepresentation.

**I.    BACKGROUND**

Mr. Reed received treatment for a deformity on one of his left toes. ECF No. 1 at Ex. 1 ¶ V. The treatment entailed the placement of an internal-fixation plate across a joint in his deformed toe. *Id.* The plate should have prevented excessive motion in the toe joint. *Id.* ¶ VI. But the plate fractured only 120 days after it was implanted, requiring Mr. Reed to undergo surgery to remove it. *Id.* ¶¶ V, VI. After surgery, Mr. Reed received the diagnosis of "left 1st metatarso-phalangeal joint fusion nonunion with broken internal fixation;" his toe was still deformed due to

excessive motion in the toe joint, which prevented unionization of the joint. *Id.* While an internal-fixation plate will not "last forever," the plate here should not have fractured and required removal so soon. *Id.* ¶ VI.

As a result of the alleged premature fracture in the plate, the Reeds filed this action in the Second Judicial District Court for Washoe County, Nevada in May 2017. *See* ECF No. 1 at Ex. 1. The Reeds collectively allege (1) negligence, (2) strict product liability, (3) breach of express and implied warranties, including the implied warranty of fitness for a particular purpose, (4) misrepresentation, and (5) loss of consortium. *Id.* ¶¶ VII–X, XII. After additional briefing in regards to the amount in controversy, Arthrex successfully removed the action to this court. ECF Nos. 1, 4, 12, 14, 17. Arthrex then moved to dismiss the claims for strict product liability, breach of express and implied warranties, and misrepresentation. ECF No. 7. The Reeds opposed the motion, and Arthrex filed a reply. ECF Nos. 13, 16.

## II. LEGAL STANDARD

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2)—viewed within the context of a Rule 12(b)(6) motion to dismiss—a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw

2

the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion— even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

## III. DISCUSSION

Arthrex moves to dismiss the following claims: (1) strict product liability; (2) breach of express and implied warranties; (3) misrepresentation. The court considers the parties' arguments regarding each claim in turn.

### A. Strict Product Liability

Arthrex first moves to dismiss the Reed's strict-product-liability claim, arguing the complaint lacks sufficient factual allegations and contains contradicting allegations. ECF No. 7 at 5–8. The Reeds respond, asserting the complaint adequately alleges that the device failed and that it is unfit and unreasonably dangerous as shown by its premature fracturing. ECF No. 13 at 3–4. Alternatively, the Reeds request leave to amend their claim. *Id.* at 4.

To bring a claim for strict product liability in Nevada, a plaintiff must "demonstrate that (1) the product at issue was defective, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." *Ford Motor Co. v. Trejo*, No. 67843, 2017 WL 4294559, at *4 (Nev. Sept. 27, 2017) (citing *Shoshone Coca-Cola Bottling Co.*

3

*v. Dolinski*, 420 P.2d 855, 858 (Nev. 1966)). A plaintiff may bring a strict-product-liability claim on the theory of defect by failure to warn, defect by design, or defect by manufacturing. *Id.* Regardless of the chosen theory, the plaintiff must show the product was defective by satisfying the consumer-expectation test. *Id.* at *4. Under this test, "a plaintiff must demonstrate that a product 'failed to perform in the manner reasonably expected in light of its nature and intended function and [is] more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.'" *Id.* at *3 (quoting *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970)). "Such a condition is, in the words of the Restatement (Second) of Torts, Section 402A(1) (1965), 'unreasonably dangerous.'" *Stackiewicz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 928 (Nev. 1984). "[A]n unexpected, dangerous malfunction may suffice to establish a prima facie case for the plaintiff of the existence of a product defect," and "a specific defect in the product is not an essential element in establishing a cause of action, since in the field of products liability the focus is on the product and not necessarily its components." *Id.* (internal quotation marks and citation omitted). "When there is evidence of some dangerous condition, the factfinder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect." *Id.; see also Krause Inc. v. Little*, 34 P.3d 566, 572 (2001) (stating that "direct proof of the malfunction's cause is unnecessary; the circumstantial evidence of the malfunction can prove a manufacturing defect.").

Here, the Reeds assert a strict-product-liability claim under the theories of design defect and manufacturing defect. ECF No. 1 at Ex 1 ¶ VIII. Both theories require the Reeds to satisfy the consumer-expectation test and, contrary to Arthrex's argument, neither theory requires the Reeds to identify a specific defect. Here, the Reeds allege that the plate was placed internally across Mr. Reed's toe joint but then fractured only 120 days later. It is reasonable to infer that the plate was defective; the plate should have remained intact for the time necessary for Mr. Reed's deformed toe to heal—or in any event, longer than 120 days. The plate instead fractured prematurely. The plate therefore failed to operate in a manner reasonably expected given its intended function: to prevent joint mobility for the time necessary for Mr. Reed's toe to heal. The

4

alleged defect prevented Mr. Reed's toe from healing by allowing excess motion in the toe joint. The alleged defect also caused Mr. Reed to undergo a necessary surgery to remove the fractured plate. Accordingly, the Reeds alleged the plate was defective and was unreasonably dangerous in light of its intended use and nature.

The Reeds also allege the defect existed at the time the product left the manufacturer. The plate was placed internally across Mr. Reed's toe joint—assumedly intact—thereby preventing external forces from causing the plate to fracture after Mr. Reed's initial treatment. Accordingly, in light of the nature of the product, it is reasonable to infer that the product contained a defect when it was placed internally across Mr. Reed's toe joint and that the defect caused the plate to prematurely fracture shortly thereafter.

Finally, the Reeds allege the defect caused Mr. Reed injury in two ways. First, the Reeds allege the defect prevented Mr. Reed's deformed toe from healing by allowing excessive movement in the joint. Second, the Reeds allege the defect required Mr. Reed to undergo a necessary surgery to remove the fractured plate. Because the Reeds adequately allege a strict-liability-product claim under the consumer-expectation test, the court denies Arthrex's motion to dismiss as to the strict-product-liability claim.

### B. Breach of Express and Implied Warranties

Arthrex next moves to dismiss the Reeds' claim for breach of express and implied warranties. ECF No. 7 at 8–11. Arthrex argues the warranty claim must fail for the lack of privity between Arthrex and the Reeds, the lack of allegations regarding the express warranties made, and the lack of contact between Arthrex and the Reeds. *Id.* The Reeds counter that Nevada law does not require vertical privity and that the warranty claims must stand due to the plate's premature fracture. ECF No. 13 at 5–6. To state a breach of warranty claim under Nevada law, a plaintiff must establish three elements: (1) a warranty existed; (2) the defendant breached the warranty; and (3) the defendant's breach was the proximate cause of the plaintiff's damages. *Nevada Contract Servs., Inc. v. Squirrel Cos. Inc.*, 68 P.3d 896, 899 (Nev. 2003). The court first considers the claim as to express warranties and then turns to the claim as to implied warranties.

/ / /

1. Express Warranties

"Express warranties may be created by an affirmation of fact that relates to the goods or a description of the goods, where the information is made part of the basis of the bargain." *Radcliff v. Amiraslanov*, 381 P.3d 653 (Nev. 2012) (citing N.R.S. § 104.2313). Express warranties may also be created by a description of the goods, where the description is made part of the basis of the bargain. Nev. Rev. Stat. § 104.2313. Here, the Reeds fail to allege any affirmation of fact or any description by Arthrex that relates to the plate. The claim for breach of an express warranty must therefore be denied.

2. Implied Warranties

The court now considers the claim as to any implied warranties. Nevada law recognizes two types of implied warranties: (1) implied warranty of merchantability and (2) implied warranty of fitness for a particular purpose. *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1469 (D. Nev. 1992) (citing N.R.S. §§ 104.2314–.2315). The Reeds acknowledge that they do not assert a claim for breach of the implied warranty for a particular purpose.[1] ECF No. 13 at 5–6. Accordingly, the court considers only a claim for breach of the implied warranty of merchantability.

Arthrex argues that Nevada law clearly requires privity for an implied-warranty claim, citing *Long v. Flanigan Warehouse,* 382 P.2d 399 (Nev. 1963) and *Amundsen v. Ohio Brass Co.*, 513 P.2d 1234 (Nev. 1973). ECF Nos. 7 at 9, 16 at 5. The Reeds cite *Hills Co. v. Johnston Pump Co. of Pasadena, Cal.*, 560 P.3d 154 (Nev. 1977) and *Forest v. E.I. DuPont de Nemours and Co.*, 791 F. Supp. 1460 (D. Nev. 1992) to argue that vertical privity is not required in the instant case. The court agrees with the Reeds.

In *Hills Company*, the Nevada Supreme Court held that the lack of vertical privity did not preclude the plaintiff's action for breach of warranty against the defendant. 560 P.2d at 157. The Nevada Supreme Court specifically stated that neither *Long* nor *Amundsen* dictated otherwise

---

[1] The complaint states that the Reeds bring the warranty claims based on warranties relating to the products "intended uses and purposes." ECF No. 1 at Ex. 1 ¶ IX. The court therefore agrees that the claim involves the implied warranty of merchantability rather than the implied warranty of fitness for a particular purpose. *See* Nev. Rev. Stat. §§ 104.2314–.2315.

6

because "those cases dealt with horizontal, not vertical privity." *Id.* Accordingly, under *Hills Company*, Nevada law does not require vertical privity for breach-of-warranty actions seeking redress for personal or property injury caused by defective products. *Id.*; *see also Forest*, 791 F. Supp. 1460; *see also Zaika v. Del E. Webb Corp.*, 508 F. Supp. 1005, 1012 (D. Nev. 1981). Because Arthrex's privity argument fails, the court denies Arthrex's motion to dismiss as to the claim for breach of implied warranty of merchantability.

### C. Misrepresentation

The court now turns to the final claim at issue: misrepresentation. Arthrex moved to dismiss the claim regardless of whether the Reeds argue negligent misrepresentation or fraudulent misrepresentation. ECF No. 7 at 9, 11. The Reeds clarify that they "[do] not assert a claim for negligent misrepresentation" and concede that their claim for fraudulent misrepresentation fails to satisfy the requisite pleading standard. ECF No. 13 at 5–6. The court therefore dismisses the Reed's fraudulent-misrepresentation claim.

### D. Amendment

In the event a court dismisses the complaint, or a part thereof, the court shall grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit frequently considers five factors when deciding whether to grant leave to amend a complaint: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

The court dismisses the Reed's claims for breach of express warranty and for misrepresentation for the reasons stated above. But the Reeds believe they can cure the deficiencies and ask the court for leave to amend. *Id.* at 5–6. Arthrex argues leave to amend should be denied, stating that the express-warranty fails as a matter of law for lack of privity and that the misrepresentation claim fails since Arthrex never interacted directly with the Reeds.

Arthrex's first argument fails. Vertical privity is not required for a breach of warranty claim. *Hills Co.*, 560 P.3d 154; *see also Forest*, 791 F. Supp. 1460; *see also Zaika*, 508 F. Supp. at 1012.

Arthrex's second argument also fails. The court is unable to determine what interactions occurred—or did not occur—between Arthrex and the Reeds for purposes of a fraudulent-misrepresentation claim with the materials before it now. The court cannot speculate whether misrepresentations may or may not have been made at this juncture and, instead, grants the Reeds leave to file an amended complaint.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that defendant's motion to dismiss (ECF No. 7) is **GRANTED in part** as to plaintiffs' claims for breach of express warranty and for fraudulent misrepresentation.

IT IS FURTHER ORDERED that defendants' motion to dismiss is **DENIED in part** as to plaintiffs' claim for strict product liability and for breach of the implied warranty of merchantability.

IT IS FURTHER ORDERED that plaintiffs shall have twenty (20) days after entry of this order to file an amended complaint, if any. If plaintiffs do not file an amended complaint, this action shall proceed only on plaintiffs' unchallenged claims and claims for strict product liability and for breach of the implied warranty of merchantability.

IT IS SO ORDERED.

DATED this 11th day of October, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE